UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI


LUTHER ALLEN WEST, SR.                                         CASE NO. 06-10482-DWH
                                                                              CHAPTER 12


HAROLD J. BARKLEY, JR., TRUSTEE                                          PLAINTIFF

VERSUS                                                      ADV. PROC. NO. 09-1080-DWH

GRACE WEST and H&G LAND COMPANY, L.P.                                    DEFENDANTS


OPINION


On consideration before the court is a motion to dismiss, which was filed by the

defendants, Grace West and H&G Land Company, L.P., ("H&G"), regarding the Corrected

Amended Complaint filed by the plaintiff, Harold J. Barkley, Jr., Trustee, ("trustee"); a response

to said motion having been filed by the trustee; an evidentiary hearing having been conducted on

the motion; the parties having submitted respective memoranda of law; and the court, having

heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding

pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

The court finds that this is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B),

(E), (F), (H), and (O). Even if this court's conclusion is incorrect, all of the parties have

consented on the record to this court entering a final order with respect to the statute of

limitations issues which are the primary matters addressed in this opinion.

II.

On March 8, 2012, this court entered an initial order resolving certain parts of the defendants' motion to dismiss. The following issues were addressed in the order, to-wit:

A.  A Chapter 12 trustee initially does not have inherent statutory standing to pursue avoidance actions because such causes of action belong to the Chapter 12 debtor-in-possession. No standing had been granted to the Chapter 12 trustee, pursuant to 11 U.S.C. § 1202(b)(2), to pursue the subject adversary proceeding as of May 14, 2009. The court, nevertheless, concluded that standing to continue and maintain the subject adversary proceeding was granted to the Chapter 12 trustee pursuant to the terms of the order confirming the debtor's Chapter 12 plan, entered on August 10, 2009. The Court further concluded that the defendants were judicially estopped from challenging the Chapter 12 trustee's standing as a result of the confirmation order. All of the parties agreed to the order which vested the trustee with all rights of the Chapter 12 debtor-in-possession to pursue causes of action under §§ 542, 543, 544, 545, 547, 548, and 549 of the Bankruptcy Code.[1] *See In re Teigen*, 123 B.R. 887, 888-89 (Bankr. D. Mont. 1991). The order also preserved all claims and defenses that had previously been plead by the parties. Whether the complaint was filed on May 14, 2009, or shortly after August 10, 2009, will have no bearing on the outcome of this proceeding.

---

[1]Hereinafter, all cited code sections will be considered as sections of the United States Bankruptcy Code unless specifically designated otherwise.

2

B.    The Court concluded that the statute of limitations, set forth in § 546(a), expired

prior to the filing of this adversary proceeding with respect to the trustee's claim

seeking to avoid a prepetition preferential transfer to the defendant, Grace West,

in the amount of $5,400.00 pursuant to § 547(b). This defense was not equitably

tolled or waived by said defendant. (The possibility of an insider payment to

Grace West was disclosed on the debtor's Statement of Financial Affairs as

mentioned hereinbelow.)

C.    The Court concluded that the assignment given by the debtor, Luther Allen West,

Sr., to his mother, Grace West, of his partnership interest in H&G, was a collateral

assignment, rather than an absolute assignment, because the assignment would

become void when the underlying indebtedness was satisfied.

The court reaffirms the conclusions set forth in the aforesaid order.

III.

In their motion to dismiss, the defendants contend that the trustee's claims are effectively

barred by the statutes of limitations set forth in § 546(a) and § 549(d) of the Bankruptcy Code. A

chronology of the factual events underpinning this proceeding is set forth as follows, to-wit:

A.    On March 17, 2006, the debtor, Luther Allen West, Sr., filed a voluntary petition

for relief pursuant to Chapter 12 of the United States Bankruptcy Code. Included

in his schedules were the following:

1.    The debtor's mother, Grace West, was scheduled as a creditor.

2.      The Statement of Financial Affairs ("SOFA") listed Grace West in paragraph 3.c. as an insider creditor who had received a pre-petition payment.

3.      On Schedule B, the debtor listed his ownership of a 9% limited partnership interest in H&G, having an unknown value. He stated that, "Mother, Grace West, is [sic]and Attorneys control this partnership. Whatever interest debtor receives from this is contingent upon his mother letting him have it."

4.      On Schedule G, the debtor listed "HG Land Company, L.P., c/o Grace West" as an other party to an unexpired agricultural lease.

B.      On June 14, 2006, Grace West filed a proof of claim reflecting an indebtedness owed to her by the debtor in the sum of $594,796.29. The following items were attached to the proof of claim form:

1.      A deed of trust, dated December 31, 2002, which encumbered real property owned by the debtor.

2.      A security agreement on the debtor's equipment and his interest in H&G.

3.      An assignment of the debtor's interest in H&G, dated December 31, 2002.

4.      A letter from First Security Bank, dated June 7, 2006, reflecting that the debtor's promissory note was owed to a custodian account for the benefit of Grace F. West.

5.      The promissory note executed by the debtor in favor of Grace West, dated December 31, 2002.

4

C.    On June 19, 2006, the debtor filed his initial Chapter 12 plan.

D.    On the dates set forth hereinbelow, H&G, by and through its general partner,

transferred the funds designated to Grace West on account of her alleged security

interest in the debtor's 9% partnership interest in H&G, to-wit:

| 12/19/06 | $6,744.98 |
| 12/28/06 | 4,456.80 |
| 01/11/07 | 6,195.65 |
| 01/31/07 | 12,338.98 |
| 02/20/07 | 4,657.80 |
| 03/22/07 | 6,025.86 |
| 03/28/07 | 19,000.00 |
| 10/25/07 | 8,409.54 |
| TOTAL | $67,823.61 |

E.    Pursuant to a motion filed on behalf of the debtor, certain real and personal

properties owned by the debtor were sold. Pursuant to agreed orders, dated

respectively May 11, 2007, and May 21, 2007, the proceeds of these sales were

distributed to the creditors holding claims secured by the properties, including

Grace West. As set forth in the trustee's Corrected Amended Complaint, the court

assumes that her share was the sum of $216,372.34, which, of course, was

significantly less than the full amount of her total claim as reflected on the proof

of claim form. Grace West's lien on the debtor's real property was perfected by

5

her recorded deed of trust, so she was clearly entitled to these proceeds as a partial payment on her secured claim.

F.     Pursuant to an order entered by the court, the debtor filed a second Chapter 12 plan on April 9, 2007, and then a third Chapter 12 plan on August 16, 2007.

G.     Pursuant to notice, the discovery deposition of Grace West was taken on May 28, 2008, and the discovery deposition of H&G, which was represented by its accountant, Mickey Aldridge, was taken on November 11, 2008. (The trustee asserts that he first learned of the above listed post-petition transfers to Grace West from H&G at this latter deposition.)

H.     On May 14, 2009, the trustee filed his initial complaint against Grace West and H&G.

I.     On June 24, 2009, the confirmation hearing was held, and the aforementioned order, confirming the debtor's third Chapter 12 plan, was entered on August 10, 2009.

J.     On October 15, 2010, pursuant to an order of the court, the defendants, Grace West and H&G, filed an amended answer to the trustee's complaint asserting the statutes of limitations defenses, which are provided in § 546(a) and § 549(d) of the Bankruptcy Code.

K.     On October 15, 2010, the trustee filed his Corrected Amended Complaint against the defendants alleging that he could defensively assert § 502(d) of the Bankruptcy Code.

6

L.    On February 14, 2012, an evidentiary hearing was conducted on the defendants'

motion to dismiss, and the parties were permitted an opportunity to submit post-

hearing memoranda which have now been considered by the court.

IV.

In his Corrected Amended Complaint, the trustee seeks the following relief:

A.    Pursuant to several enumerated sections of the Bankruptcy Code, including

specifically § 544(a), the trustee seeks to avoid Grace West's unperfected security

interest in the debtor's 9% partnership interest in H&G.

B.    The court is asked to determine that the trustee is entitled to the ownership and

possession of the debtor's interest in H&G, as well as, to the use and benefits of

said interest.

C.    Pursuant to § 547(b), the trustee seeks recovery of the sum of $5,400.00 as a

preferential transfer to an insider which occurred on July 5, 2005. (As set forth

hereinabove, the court has already determined that the recovery of this particular

transfer is barred by the statute of limitations set forth in § 546(a) of the

Bankruptcy Code.)

D.    Pursuant to § 549(a), the trustee seeks to recover the sum of $67,823.61,

representing the total of the eight post-petition transfers, enumerated hereinabove,

that were made from H&G to Grace West from December 19, 2006 through

October 25, 2007.

E.      Presumably, pursuant to § 362(k), the trustee seeks to recover the sum of
        $67,823.61, addressed in the paragraph immediately preceding, from Grace West
        as a series of post-petition violations of the automatic stay.

F.      Pursuant to § 542 and § 543, the trustee seeks the turnover of the debtor's interest
        in H&G to the bankruptcy estate, as well as, all sums paid or payable on account
        of such interest since the date of the debtor's bankruptcy petition. The trustee
        seeks a decision to the effect that H&G should be required to remit to the trustee
        all distributions due on account of the debtor's interest in H&G, including, but not
        limited to, the distribution of all net cash flow as set forth in the partnership
        agreement.

G.      Without reciting the specific provisions, the trustee seeks a detailed accounting
        from H&G, as well as, from Grace West.

H.      Pursuant to § 502(d), the trustee asserts that if he is time barred with regard to any
        of his claims against Grace West or H&G, that the court order that he recover
        from Grace West the sum of $216,372.34, which she received from the liquidation
        of the debtor's homestead real property, as a result of her secured claim thereon,
        as well as, any other sums that she may have received.

As noted hereinabove, the trustee initially filed his complaint on May 14, 2009. The
defendants contend that, pursuant to § 546(a), the right to file proceedings under §§ 544, 545,
547, 548, or 553 expired on March 17, 2008, two years after the debtor's bankruptcy case was
filed. The relevant language of § 546(a) provides as follows:

8

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of–
>
> > (1) the later of–
> >
> > > (A) 2 years after the entry of the order for relief; or
> > > (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> >
> > (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

The defendants further contend that, pursuant to § 549(d), the statute of limitations for seven of the eight post-petition transfers expired on March 29, 2009, which was two years after the date of the post-petition transfer which occurred on March 28, 2007. The post-petition transfer that occurred on October 25, 2007, in the sum of $8,409.54, would not be barred from recovery by the trustee pursuant to § 549(d) since its two year period had not expired when the trustee's complaint was filed. The relevant language of § 549(d) provides as follows:

> (d) An action or proceeding under this section may not be commenced after the earlier of–
>
> > (1) two years after the date of the transfer sought to be avoided; or
> > (2) the time the case is closed or dismissed.

11 U.S.C. § 549(d).

## V.

The trustee has raised three arguments in opposition to the defendants' assertion of the statutes of limitations defenses. First, the trustee contends that the defendants waived the statutes of limitations. Second, he asserts that the statutes of limitations have been equitably tolled, and, finally, he asserts that the statutes of limitations should be extended. The court is of the opinion that the justification for extending the statutes is practically synonymous with equitable tolling, so these two arguments will be considered as one.

9

On August 6, 2010, the defendants filed their motion to amend their answer to the

trustee's initial complaint in order to plead the two applicable statutes of limitations. Following a

hearing conducted on September 24, 2010, the court granted the defendants' motion to amend,

and, at the same time, allowed the trustee to file his Corrected Amended Complaint to raise §

502(d). Rule 8(c), Federal Rules of Civil Procedure, does not indicate that if an affirmative

defense is not immediately plead that it is waived. Consequently, the defendants did not waive

their rights to plead these defenses. They were permitted to assert the two statutes after filing a

motion to do so. The delay has not unreasonably prejudiced the progress of this litigation.

Equitable tolling of the statutes of limitations would generally be permitted if there were

evidence of fraud, concealment, or exceptional circumstances. *See In re Porras*, 312 B.R. 81

(Bankr. W.D. Tex. 2004), and *In re Bodenstein,* 253 B.R. 46 (B.A.P. 8th Cir. 2000). In the

*Porras* decision, the court commented as follows:

> However, statutes of limitation, including § 546(a), are subject to the doctrine
> of equitable tolling. *See e.g., In re M & L Business Machine Company, Inc.*, 75 F.3d
> 586, 591 (10th Cir. 1996), citing *Ernst & Young v. Matsumoto (In re United Ins.
> Management, Inc.)*, 14 F.3d 1380, 1385 (9th Cir. 1994) (noting that every court that
> has considered this issue has held that equitable tolling applies to § 546(a)(1)); *see
> also In re Texas General Petroleum*, 52 F.3d 1330 (5th Cir. 1995) (holding that §
> 546(a) is an "ordinary" statute of limitations that is not jurisdictional and can be
> waived). Equitable tolling will prevent § 546(a) from running when the trustee,
> despite the exercise of due diligence, is prevented from asserting a cause of action
> because she remains unaware of that cause of action due to fraud, or when
> "extraordinary circumstances beyond plaintiff['s] control made it impossible to file
> claims on time ...."

*Porras*, 213 B.R. at 107 (citations omitted).

> The extent to which a plaintiff used due diligence is measured by an objective
> standard; therefore a court may determine, as matter of law, that a trustee failed to
> exercise due diligence if uncontroverted evidence irrefutably demonstrates that
> plaintiff discovered or should have discovered fraud but, nonetheless, failed to timely

file a complaint. *M & L Business Machine*, 75 F.3d at 591. That said, however, "tolling is ordinarily a fact-based inquiry ...." *Id.*, citing *Schwartz v. Kursman (In re Harry Levin, Inc.)*, 175 B.R. 560, 579 (Bankr. E.D. Pa. 1994).

*Id.*

Unlike the factual scenario in *Porras*, in the case currently before this court, the defendants were not attempting to perpetrate a fraud against the trustee, nor were they attempting to mislead him.

Indeed, there were ample signs pointing to the need for additional inquiry. The court also does not believe that the transfers in question were intentionally concealed. As set forth hereinabove, the debtor's Statement of Financial Affairs listed Grace West in paragraph 3.c., as an insider creditor who had received a pre-petition payment. On Schedule B, the debtor listed his 9% limited partnership interest in H&G as having an unknown value. He indicated that his mother, Grace West, controlled the partnership. Consequently, whatever distributions that the debtor might receive from the partnership were contingent upon decisions made by his mother.

Perhaps more revealing, however, is the proof of claim filed by Grace West on June 14, 2006, evidencing a debt owed to her in the sum of $594,796.29. Through the proof of claim, she indicated that she held a security interest on the debtor's equipment and his shares of H&G. She attached to the proof of claim copies of the security agreement and the debtor's assignment of his interest in H&G to her, both dated December 31, 2002. These disclosures are not indicative that the debtor or his mother were attempting to "hide the ball" from the trustee. Consequently, the court is of the opinion that the statutes of limitations should not be equitably tolled, nor should they be extended.

11

The court concludes that the defenses provided by the two statutes of limitations are viable, and that they bar the trustee from utilizing §§ 544(a), 547(b), 548(a), and 549(a) to avoid the pre and post-petition transfers to Grace West, as well as, to avoid her security interest in the debtor's 9% partnership interest in H&G. While there may be other reasons to preclude the trustee from recovering the post-petition transfer that occurred on October 25, 2007, § 549(d) does not bar his effort to do so.

VI.

The court will next consider whether the trustee can utilize defensively § 502(d) of the Bankruptcy Code to achieve similar results by having Grace West's claim disallowed and recovering payments that she has already received on her claim. Section 502(d) provides as follows:

> (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

It is undisputed that while Grace West clearly held a security interest in and an assignment of the debtor's partnership interest in H&G, she did not perfect her lien by properly filing Uniform Commercial Code financing statements. Succinctly stated, the trustee contends that the debtor's interest in H&G is an asset of the bankruptcy estate, and, because of § 544(a), his claim as trustee to the partnership interest is superior to that of Grace West. The trustee also asserts that, pursuant to § 502(d), he can request the disallowance of Grace West's claim, and

12

there is no time limit to bar this request. In this context, the trustee cites *Airadigm Commc'ns.,*

*Inc. v. FCC (In re Airadigm Commc'ns., Inc.)*, 519 F.3d 640, 650 (7th Cir. 2008), where the court

indicated as follows:

> Airadigm also appeals the lower courts' conclusions that the FCC's liens
> could not be avoided under § 544(a) of the bankruptcy code, a decision regarding a
> mixed question of law and fact that we review de novo. *Mungo*, 355 F.3d at 974.
> Airadigm, as the debtor-in-possession, has the "rights and powers of ... a creditor
> that extends credit to the debtor at the time of the commencement of the case, and
> that obtains, at such time and with respect to such credit, a judicial lien" on the
> property in question. 11 U.S.C. § 544(a)(1). This "strong arm" power functions much
> like a foreclosure. If at the time of Airadigm's filing some hypothetical unsecured
> creditor could have obtained a judicial lien superior to the interest of the party
> bringing a secured claim in the bankruptcy proceedings, the estate can avoid the
> interest. *See In re Leonard*, 125 F.3d 543, 545 (7th Cir. 1997). But unlike a regular
> foreclosure, the property simply becomes the estate's free of the secured lien. Here,
> if some hypothetical creditor could have obtained an interest superior to the FCC's
> at the time of Airadigm's filing, the FCC will become an unsecured creditor with
> respect to the licenses.

*Id.* at 650.

The primary problem with the trustee's reasoning is that § 502(d) does not support his

position when § 546(a) and § 549(d) are "factored into the equation." Section 502(d) plainly

states that the court shall disallow any claim of any entity from which property is recoverable

under sections 542, 543, 550, or 553, or that is a transferee of a transfer avoidable under sections

522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), unless the entity or transferee has paid the

amount or turned over the property for which such transferee is liable. In this particular

proceeding, the trustee simply cannot recover the property or avoid the transfers since he is time-

barred from doing so pursuant to § 546(a) and § 549(d). Consequently, he cannot establish that

either Grace West or H&G is liable to the bankruptcy estate. Thus, there is no legitimate reason

to disallow Grace West's claim.

Because the security interest that Grace West holds as to the debtor's interest in H&G is still valid, <u>insofar as the debtor is concerned</u>, the trustee cannot claim a superior interest ahead of Grace West because his complaint to assert his § 544(a) "strong arm powers" is barred by the two-year statute of limitations found in § 546(a). The same logic applies to the trustee's ability to use § 549(a) to avoid the post-petition transfers, with the exception of the one transfer which occurred on October 25, 2007, because his complaint is time-barred by § 549(d).

A decision which appropriately concludes that the trustee cannot use §502(d) defensively, but which also discusses cases reaching a contrary result, is *In re Mktg. Assocs. of Am., Inc.*, 122 B.R. 367 (Bankr. E.D. Mo. 1991). The court provided the following insight:

> This Court declines the Trustee's request to follow the holdings of *Mid Atlantic Fund* [60 B.R. 604 (Bankr. S.D.N.Y. 1986)] and its progeny, and holds that the Trustee may not use Section 502(d) defensively to cause the avoidance of Kenwood's claim. First, this Court agrees with Kenwood that the plain meaning of Section 502(d) mandates that the Trustee first must timely bring his preference action in order to invoke that provision. In pertinent part, Section 502(d) requires the court to disallow any claim that is "avoidable" under Section 547 if the transferee fails to return first the preference it has received. However, it is implicit that no preference is avoidable if the action is not brought within the time limits prescribed by Section 546(a)(1). Here the Trustee has admitted that this statute of limitations has expired. Thus, because no preference action may ever be brought, there can be no preference which is "avoidable" within the meaning of Section 502(d). Likewise, the same holds true when the statute speaks of the amount for which the transferee "is liable" under Section 550. This provision provides in pertinent part that the transferee is liable to the extent of the transfer avoided. However, because the time limitations of Section 546(a)(1) preclude any such avoidance, this portion of Section 502(d) is equally inapplicable to the instant case.

> Second, while this Court believes that the Trustee's reliance on *Mid Atlantic Fund* is on point because it stands for the proposition which the Trustee asserts, the Court questions the propriety of the underlying case itself. In *Mid Atlantic Fund*, the court found that the Section 546 statute of limitations had run. Despite this fact, the court still allowed the trustee to prosecute his preference action and found that the trustee had made his *prima facie* case, which caused the court to void the claim. 60 B.R. at 609. Thus, simply because the trustee prosecuted its preference action under

14

Section 502(d), he was able to circumvent the normal two-year time limit for the purpose of disallowing the creditors' claim entirely. This Court finds such a procedural windfall unjust and does not intend to afford the Trustee the same opportunity in the instant case.

. . . .

. . . However, in both *Mid Atlantic Fund* and the instant case the trustees failed to timely bring a Section 547 preference complaint, and are forever barred from so doing. Thus, because there is not and never can be a preferential transfer which is contrary to the purpose of Section 502(d) (as equality of distribution is not threatened), the use of Section 502(d) is not necessary.

*Id.* at 369-70 (footnotes omitted).

In *Campbell v. United States (In re Davis)*, 889 F.2d 658, 661 (5th Cir. 1989), the Fifth

Circuit stated as follows:

The legislative history and policy behind Section 502(d) illustrates that the section is intended to have the coercive effect of insuring compliance with judicial orders.

. . . .

Granted, Section 502(d) should be used when something more than a gentle influence is needed, but penalization for appealing liability when the debtor stood ready, willing, and able is not the proper application of Section 502(d). This section is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate.

*Id.* at 661-62.

The Fifth Circuit pointed out that § 502(d) should be implicated to insure compliance

with a judicial order, which in *Davis* was a turnover order. *Id.* at 661 (emphasis added). The court

also indicated that the section was "triggered" when a party failed to pay funds that had been

adjudicated to belong to a bankruptcy estate. *Id.* at 662. Neither an order nor an adjudication can

occur in the adversary proceeding now before this court.

15

This issue was also addressed in *Holloway v. IRS (In re Odom Antennas, Inc.)*, 340 F.3d

705 (8th Cir. 2003). In this decision, the Eighth Circuit cited the Fifth Circuit's *Davis* decision

with approval and stated the following:

> Both the IRS and Stevens hold perfected liens. Neither has received property from a transaction that is voidable under the sections identified in section 502(d), that is, sections 522(f), 522(h), 544, 545, 547, 548, 549, and 726(a). *See* 11 U.S.C. § 502(d). The Holloways argue they may proceed under section 502(d) to avoid the liens, because the trustee did not attempt to avoid the tax penalty or the punitive damages judgment under section 724(a).
>
> Contrary to the Holloways' position, the purpose of section 502(d) is to ensure compliance with judicial orders. *See In re Davis*, 889 F.2d 658, 661 (5th Cir. 1989). The language of section 502(d) expressly provides that the entity's claim is not disallowed if the entity or transferee "paid the amount, or turned over any such property, for which such entity or transferee is liable." 11 U.S.C. § 502(d). This language indicates section 502(d) should be used to disallow a claim after the entity is first adjudged liable; otherwise, the court could not determine if the exception applies. *Davis*, 889 F.2d at 661-62 (observing "[t]he legislative history and policy behind section 502(d) illustrate [ ] that the section is intended to have the coercive effect of insuring compliance with judicial orders" and section 502(d) "is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate"). The Holloways do not possess judicial orders requiring the turnover of voidable transfers, and section 502(d) does not provide affirmative relief. *In re Parker N. Am. Corp.*, 24 F.3d 1145, 1155 (9th Cir. 1994) (noting "[s]ection 502(d) operates to disallow claims of transferees who do not surrender their avoidable transfers. It does not compel the surrender, nor permit affirmative relief of any kind.").
>
> The Holloways still assert any party in interest can disallow a claim pursuant to section 502(d). However, "section 502(d) makes clear that its provisions are exclusive as to the kinds of situations it describe." 4 Lawrence P. King, et al., Collier on Bankruptcy ¶ 502.05[3] (15th ed. rev. 2003). Collier further explains section 502(d) applies when the trustee successfully pursues an action "under section 724(a) to 'avoid a lien that secures a claim of a kind specified in section 726(a)(4).'"

*Id.* at 708.

In a case closely on point, Judge Marvin Isgur in *In re IFS Fin. Corp.*, No. 08-03047,

2008 WL 4533713, at *2 (Bankr. S.D. Tex. Oct. 2, 2008), commented as follows:

16

Based on § 502(d)'s plain language and the Fifth Circuit's interpretation of § 502(d), the Court holds that Blitz's proof of claim may not be disallowed under § 502(d). A claim may be disallowed under § 502(d) only if the claim is based on a transfer that the trustee could actually recover under the avoidable transfer provisions. If an affirmative defense or other grounds preclude the trustee from recovering the avoidable transfer, the claim cannot be disallowed under § 502(d).

. . . .

The Court must give effect to a statute's plain language. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). Section 502(d)'s plain language requires disallowance only of claims that are "recoverable" or "avoidable" under the relevant turn-over and avoidance provisions. *In re Mkg.* [sic] *Assocs. of Am., Inc.*, 122 B.R. 367 (Bankr. E.D. Mo. 1991). The last clause of § 502(d) emphasises [sic] this interpretation by describing transferees subject to the provisions as creditors who are "liable." Section 502(d) makes no exceptions for claims that would be "recoverable" or "avoidable" if the court ignores an affirmative defense that precludes the trustee from recovering or avoiding a transfer that gave rise to the claim. Blitz's alleged fraudulent transfer is not recoverable or avoidable. TUFTA's statute of repose has extinguished any claim the trustee may have held under § 544 of the Bankruptcy Code. Accordingly, the Court cannot disallow Blitz's claim.

Interpreting § 502(d) according to its plain language is consistent with the Congressional purpose behind the statute. As the Fifth Circuit has held, § 502(d) was intended to serve as a mechanism to enforce orders and judgments based on turnover and avoidance complaints. *Campbell v. U.S. (In re Davis)*, 889 F.2d 658, 661 (5th Cir. 1989) ("The legislative history and policy behind Section 502(d) illustrates that the section is intended to have the coercive effect of insuring compliance with judicial orders."); *Holloway v. Internal Revenue Serv. (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003). Section 502(d) "is designed to be triggered after a creditor has been afforded a reasonable time to turn over amounts adjudicated to belong to the bankruptcy estate." *Id.* at 662. The statute's "language indicates section 502(d) should be used to disallow a claim after the entity is first adjudged liable; otherwise, the court could not determine if the exception applies." *In re Odom Antennas, Inc.*, 340 F.3d at 708.

. . . .

This Court is bound by the Fifth Circuit. The Fifth Circuit holds that § 502(d) operates to enforce orders and judgments, not to disallow claims based on theoretically avoidable transfers when no liability has been established and when no liability can be established.

17

*Id.* at *5.

This court has reviewed and considered the decisions cited by the trustee in support of his position that § 502(d) can be used defensively even when the trustee might be time barred from exercising his statutory avoiding powers. However, like the court in *IFS Fin. Corp.*, this court is bound by Fifth Circuit authority which provides that § 502(d) is designed to be triggered after a creditor has been "adjudicated" to turn over amounts belonging to the bankruptcy estate. The Fifth Circuit's decision comports with the plain meaning of the statute. *See United States v. Ron Pair Enters., Inc.* 489 U.S. 235, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (courts should interpret a statute in accordance with its plain meaning). Consequently, this court declines to follow those decisions which construe the section otherwise. The defendants' motion to dismiss is not deflected by § 502(d) when the trustee's causes of action are time barred and the defendants can not be adjudicated to have liability to the estate.

VII.

Pursuant to § 542 and § 543, the trustee seeks the turnover of the debtor's interest in H&G to the bankruptcy estate, as well as, all sums paid or payable on account of such interest since the date of the debtor's bankruptcy petition. The court is of the opinion that § 542(a) is actually the operative turnover section that applies to the proceeding. Neither of the defendants would be considered a custodian as that term is defined in § 101(11) of the Bankruptcy Code, and, since § 543 specifically addresses the turnover of property by a custodian, it is inapplicable.

The trustee points out that neither of the statutes of limitations refers to § 542(a). While the trustee's observation is technically correct, the viability of the statutes of limitations

18

significantly impacts the trustee's ability to effectively utilize § 542(a), which provides as

follows:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a
> custodian, in possession, custody, or control, during the case, of property that the
> trustee may use, sell, or lease under section 363 of this title, or that the debtor may
> exempt under section 522 of this title, shall deliver to the trustee, and account for,
> such property or the value of such property, unless such property is of
> inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

A decision that is instructive on the applicability of § 542(a) is *In re Hoang*, __ B.R. __,

2012 WL 832816 (D. Md. March 9, 2012). In that case, the trustee alleged that the defendants

received distributions as "conduits, nominees, and/or agents" of the debtor, and that they were

obligated to turn them over to the trustee or to account for their value pursuant to § 542(a). *Id.* at

*3. In the alternative, the trustee asserted that the distributions to the defendants were

unauthorized post-petition transfers subject to avoidance under § 549(a). *Id.* The defendants

contended that the trustee's claims for avoidance of the post-petition transfers were time-barred

pursuant to § 549(d). *Id.* at *4.

The trustee conceded that his § 549(a) claims were time barred, but maintained that a

turnover order pursuant to § 542(a) was the proper remedy under the circumstances presented. *Id.*

Following an appeal of the bankruptcy court's decision sustaining the defendants' partial motion

to dismiss, the district court held as follows:

> In a chapter 7 case, the trustee becomes the representative of the estate upon
> his appointment and qualification. *See* § 323. It is often said that the trustee
> essentially steps into the shoes of the debtor with respect to her interests at the time
> the petition is filed:

19

[It is a] basic tenant of bankruptcy law that a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition. Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest. Further, a trustee takes the property subject to the same restrictions that existed at the commencement of the case. " 'To the extent that an interest is limited in the hands of a debtor, it is equally limited as property of the estate.' "

. . . .

. . . The statute of limitations provided in § 549(d), however, makes clear that any such action must be brought within two years of the date of transfer. If an avoidance action is untimely or unsuccessful, the property in question is not property of the estate, so the turnover provision cannot be used to recover it.

. . . .

Several policy reasons support the confinement of actions based on post-petition transfers to section 549, rather than section 542. For example, if both section 542 and 549 were available to avoid post-petition transfers, the statute of limitations contained within § 549(d) would be rendered meaningless, since a trustee who is time-barred by § 549(d) could merely invoke § 542.

. . . .

. . . It follows logically that where a transfer cannot be avoided because it is time-barred, the turnover provision could have no application. Thus, although § 542 does not include a statute of limitations, it is effectively subject to the limitations period provided in § 549(d) with respect to property transferred post-petition that might have otherwise been drawn back into the estate.

*Id.* at *8-13 (citations omitted).

As set forth hereinabove, the trustee in this proceeding is time-barred by § 549(d) from avoiding seven of the eight post-petition transfers, and is time-barred by § 546(a) from utilizing his "strong arm" powers, granted pursuant to § 544(a), to avoid the unperfected security interest that Grace West holds in the debtor's partnership interest in H&G. Had the trustee timely filed his complaint, he could have avoided the security interest of Grace West for the benefit of the

20

estate. However, since he did not do this, the security interest of Grace West remains enforceable insofar as the debtor is concerned even though it was not perfected by the filing of Uniform Commercial Code financing statements. Like the trustee, the unsecured creditors of the debtor's bankruptcy estate cannot take priority over nor share ratably with Grace West's secured claim. Consistent with the reasoning of the *Hoang* decision, the trustee cannot utilize the authority of § 542(a) since he has no underlying right to recover the post-petition transfers or the debtor's partnership interest in H&G. The trustee now stands in the shoes of the debtor who remains obligated to his mother as a result of the pre-petition security agreement and the assignment that he executed. The debtor can not exempt his interest in H&G, nor can the trustee use, sell, or lease this interest free and clear of the secured claim of Grace West. As such, the statutory requirements necessary to employ § 542(a) are conspicuously absent. Therefore, the defendants' motion to dismiss the trustee's § 542(a) claim is well taken.

VIII.

The trustee has advocated the position that § 544(a) is self-effectuating. In other words, in this proceeding, Grace West's unperfected security interest should be avoided without the necessity of the trustee even filing an adversary proceeding complaint. The court would simply state that if the trustee's position were correct, there would have been no purpose in specifically including § 544 in the language of § 546(a), which provides that a § 544 cause of action is barred if a complaint is not timely filed. That is a prominent indicator that Congress did not intend for § 544(a) to be self-effectuating.

## IX.

Presumably, pursuant to § 362(k), the trustee seeks to recover the sum of $67,823.61,

representing the total of the post-petition transfers from H&G to Grace West, as a series of post-

petition violations of the automatic stay. The court is of the opinion that this part of the trustee's

complaint is similar to his claim to recover the value of these transfers pursuant to the turnover

authority set forth in § 542(a). Since the security interest of Grace West can not be avoided or

subordinated by the trustee using the "strong arm" powers of § 544(a), the security interest and

assignment granted by the debtor remain viable. In this context, Grace West retained her right to

receive distributions on account of her security interest and her assignment. The trustee would

have significant difficulty in establishing that the series of distributions amounted to willful

violations of the automatic stay as contemplated by § 362(k). The distributions were simply post-

petition transfers of proceeds related to an asset of the debtor that had been pledged and assigned

as collateral. The court has already addressed the impact of § 549(d) on the trustee's ability to

recover the post-petition distributions.

There is considerable doubt that the trustee, who is the representative of the estate, can

file a cause of action under § 362(k) to recover actual damages, costs, and attorneys' fees, since

the trustee is not technically an "individual." Two cases which construed § 362(h), the

predecessor to § 362(k), are *In re Amberjack Interests, Inc.*, 326 B.R. 379 (Bankr. S.D. Tex.

2005), and *In re Just Brakes Corporate Sys., Inc.*, 108 F.3d 881 (8th Cir. 1997).

Consequently, the court is of the opinion that the defendants' motion to dismiss that part

of the trustee's complaint asserting violations of § 362(k) is well taken.

22

## X.

The only issue remaining is whether the trustee can recover the October 25, 2007 transfer that occurred within two years of the date of the trustee's complaint. As to this transfer, the trustee's cause of action is not barred by § 549(d). However, as noted hereinabove, this transfer represents a distribution of proceeds from the debtor's interest in H&G which is subject to the secured claim of Grace West. Since her claim can not be avoided or subordinated because of the provisions of § 546(a), it would be considered a lien and attach to the distribution. So, even if the trustee could recover these funds as a non-time barred post-petition transfer, he would ultimately have to distribute them to Grace West because of her unavoidable security interest.

Having now addressed all of the relevant matters set forth in the trustee's complaint, the court is compelled to conclude that the defendants' motion to dismiss is well taken. The complaint will be dismissed by a separate order to be entered contemporaneously herewith.

Ordered and adjudged this, the 5th day of June, 2012.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE

23